# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ALIREZA SADEGHI, M.D. and TAYLOR THEUNISSEN, M.D., on behalf of PATIENT JB,<br><br>               Plaintiffs,<br><br>    v.<br><br>UNITED HEALTHCARE INSURANCE COMPANY, and MORGAN STANLEY HEALTH BENEFITS AND INSURANCE PLAN,<br><br>               Defendants. | Case No. 20-1846 |

## **COMPLAINT**

By way of this Complaint, Plaintiffs Alireza Sadeghi M.D. and Taylor Theunissen, M.D. on behalf of Patient JB ("Plaintiff") bring this action against United Healthcare Insurance Company ("United"), and Morgan Stanley Health Benefits and Insurance Plan (the "Plan Defendant") (together, "Defendants").

1.     This is an action under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), and its governing regulations, concerning Defendants' under-reimbursement to Plaintiffs for post-mastectomy breast reconstruction surgical services.

2.     United was the claims administrator for the Plan Defendant, under which the Patient, JB, was the Plan beneficiary.  The Plan Defendant delegated to United discretionary authority to determine claim benefits and to adjudicate appeals, making United a fiduciary under ERISA.

3.     The Plan Defendant was a self-funded plan, meaning that it paid the amounts due to participants and beneficiaries from its own financial resources.  Morgan Stanley Domestic

Holdings, Inc., was the Plan Sponsor, and the Morgan Stanley Chief Human Resources Officer was the Plan Administrator and Named Fiduciary. United was delegated fiduciary duty as the Health Plan Administrator to administer the provisions of the medical plan, including paying claims from Plan assets.

4.      Patient JB was initially diagnosed with ductal breast hyperplasia, an adenoma, and chronic fibroadenosis. On November 1, 2018, she underwent a bilateral mastectomy, and immediately following, Dr. Sadeghi and Dr. Theunissen performed bilateral breast reconstruction surgery as co-surgeons.

5.      Neither Dr. Sadeghi nor Dr. Theunissen participated in United's network of contracted health care providers.

6.      After each of these breast reconstruction surgeries, Plaintiffs submitted invoices in the form of CMS-1500 forms as required to United for a total amount of $389,000.00. Claiming that the bilateral breast reconstruction surgical procedure did not require a co-surgeon, United refused to reimburse any amount to either surgeon, and paid $0, leaving Patient JB financially responsible for the entire balance bill.

## JURISDICTION

7.      The Court has subject matter jurisdiction over Plaintiff's ERISA claims under 28 U.S.C. § 1331 (federal question jurisdiction).

8.      The Court also has jurisdiction over Plaintiffs' claims under 28 U.S.C. § 1332(a) and (c) (diversity). The parties are diverse and the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs. With respect to 28 U.S.C. § 1332(c), United's principal place of business is Minnetonka, Minnesota, and the Plan Defendant's principal place of business is New York, New York.

9.     The Court has personal jurisdiction over the parties because Plaintiffs submit to the jurisdiction of this Court, and Defendants systematically and continuously conduct business in the State of Louisiana, and otherwise have minimum contacts with the State of Louisiana sufficient to establish personal jurisdiction over them.

10.     Venue is appropriately laid in this District under 28 U.S.C. § 1391 because (a) United resides, is found, has an agent, and transacts business in the Eastern District of Louisiana, (b) United conducts a substantial amount of business in the Eastern District of Louisiana, including marketing, advertising and selling insurance products, and insures and administers group healthcare insurance plans both inside and outside the Eastern District of Louisiana; and (c) the Plan transacts business in the Eastern District of Louisiana by insuring individuals in the State (including the Patient) who are plan participants and beneficiaries of its Plan.

11.     Venue is also appropriate under 29 U.S.C. § 1132(e)(2), which requires that an ERISA plan participant has the right to bring suit where she resides or alleges that the violation of ERISA occurred.  Plaintiffs allege that Defendant violated ERISA within the Eastern District of Louisiana.

## PARTIES

12.     Plaintiff Alireza Sadeghi M.D. is a double-Board-certified Plastic Surgeon and reconstructive microsurgeon.  He graduated from the Karol Marcinkowski University of Medical Sciences, where he received his Ph.D. He completed his internship and residency in general surgery at SUNY Downstate Medical Center, where he also served as Chief Resident.  He then completed an additional residency at LSU Health Sciences Center in plastic and reconstructive surgery, and again served as Chief Resident.

13.     Plaintiff Taylor Theunissen is a Board-Certified Plastic Surgeon.  He graduated from the LSU Health Sciences Center Medical School and completed his residency in orthopedic

surgery.  He then completed an additional residency at the University of Nebraska Medical Center in plastic and reconstructive surgery.  Dr. Theunissen completed fellowship training in craniofacial plastic surgery at Stanford University.  He is Associate Professor at LSU and Tulane University medical schools.

14.     Defendant United is a health care insurance company. It was the claims administrator of the Plan Defendant. The principal place of business of United's parent company is Minnetonka, Minnesota.

15.     Plan Defendant Morgan Stanley Health Benefits and Insurance Plan is a self-funded ERISA plan.  The Plan Defendant's principal place of business is New York, New York.

## FACTUAL ALLEGATIONS

16.     On November 1, 2018, Patient JB, who was initially diagnosed with ductal breast hyperplasia, an adenoma, and chronic fibroadenosis, underwent a bilateral mastectomy immediately followed by bilateral breast reconstruction. Both surgeries would be performed on the same day, back to back, and the patient would be in the same operating room and under the same anesthesia.

17.     The bilateral breast reconstruction surgery was performed utilizing the Profunda Artery Perforator ("PAP") procedure.  The PAP procedure is an alternative to the DIEP procedure when grafting tissue to form the flap from the abdominal tissue of the patient is not an option; the PAP procedure uses tissue from the patient's inner thigh to form the flap that will be used to form the breasts.

18.     Breast reconstruction is a complex surgery.  It involves the eventual placement of a tissue expander in the flaps that will become the reconstructed breasts.  The tissue expander expands the skin and allows the placement of the breast implants.

19.    On October 10, 2018, United pre-authorized this procedure and determined that the treatment was medically necessary.

20.    After performing the PAP breast reconstruction surgery, Plaintiff Sadeghi submitted an invoice on a CMS-1500 form to United, as required, for $261,000.00.  The billed amounts, paid amounts, and CPT codes were as follows:

| CPT | Billed Amount | Paid Amount |
|---|---|---|
| S2066-LT-62 | $150,000.00 | $0.00 |
| S2066-RT-62 | $75,000.00 | $0.00 |
| 21600-62-X2 | $36,000.00 | $0.00 |
| **Total** | **$261,000.00** | **$0.00** |

HCPCS code S2066 is flap breast reconstruction. CPT 21600 means excision procedure. Modifier -62 means a co-surgeon.

21.    After performing the PAP breast reconstruction surgery, Plaintiff Theunissen submitted an invoice on a CMS-1500 form to United, as required, for $128,000.00.  The billed amounts, paid amounts, and CPT codes were as follows:

| CPT | Billed Amount | Paid Amount |
|---|---|---|
| S2066-LT-62 | $60,000,000.00 | $0.00 |
| S2066-RT-62 | $60,000.00 | $0.00 |
| 21600-62-X2 | $8,000.00 | $0.00 |
| **Total** | **$128,000.00** | **$0.00** |

22.    In its Explanation of Benefits ("EOBs"), United determined that "multiple physicians/assistants are not covered in this case."  It therefore reimbursed neither provider, paying $0.00 for the entire surgical procedure.

23.     On February 23, 2019, United sent a letter to Dr. Sadaghi stating that it "confirmed that the claim was processed correctly."  It gave as a reason that "the services of an assistant surgeon are not eligible for reimbursement when billed with CPT 3 S2066 [*sic*]."[1]

24.     Plaintiff Sadeghi filed an appeal concerning the amount of Defendants' reimbursement of Plaintiff's bill on April 8, 2019.  An assignment of benefits and Designation of Authorized Benefits was attached to the appeal.

25.     Plaintiff Sadeghi filed a second appeal concerning the amount of Defendants' reimbursement of Plaintiff's bill on June 14, 2019.

26.     United did not respond to these appeals. Plaintiff Sadeghi exhausted his administrative remedies when United failed to respond to the appeals.  Lack of response demonstrates exhaustion futility under ERISA.

27.     Plaintiff Theunissen filed an appeal concerning the amount of Defendants' reimbursement of Plaintiff's bill on June 28, 2019.  An assignment of benefits and Designation of Authorized Benefits was attached to the appeal.

28.      Plaintiff Theunissen filed a second appeal concerning the amount of Defendants' reimbursement of Plaintiff's bill on September 26, 2019.

29.     United did not respond to these appeals other than wrongly representing that the second appeal was untimely. The Plan SPD has no time period for filing appeals and, in fact, does not require a second-level appeal. Plaintiff Theunissen exhausted his administrative remedies when United failed to respond to the appeals.  Lack of response demonstrates exhaustion futility under ERISA.

---

[1] S2066, like all S codes, are HCPCS codes, not CPT codes.  The origin of "3" in this letter, as in "CPT 3," is unknown.

30.     Both Plaintiffs billed modifier -62. Modifier -62 is defined as: "Two Surgeons: When two surgeons work together as primary surgeons performing distinct part(s) of a procedure, each surgeon should report his/her distinct operative work by adding modifier 62 to the procedure code."   Both Plaintiffs worked as primary surgeons on the PAP breast reconstruction surgery procedure in this case.

31.     United denied reimbursement for the PAP breast reconstruction surgery procedure in its entirety on the grounds that "the services of an assistant surgeon are not eligible for reimbursement when billed with CPT 3 S2066 [*sic*]."   However, neither Plaintiff performed nor billed as an assistant surgeon.  The modifier to bill as assistant surgeons is -80.  The modifier to bill as co-surgeons is -62, which is how the Plaintiffs billed United in this case.

32.     In its EOB, United represented that "multiple physicians/assistants are not covered in this case."   This is false under the clear and unambiguous terms of the Plan, which cover "Surgeon and Assistant Surgeon" under the Schedule of Benefits for the Medical Plan in the Summary Plan Description ("SPD") for out-of-network providers.

33.     When United pre-authorized the PAP breast reconstruction surgery procedure, it knew that both Plaintiffs would be performing this surgery as co-surgeons because this fact was disclosed in the pre-authorization request.

34.     Plaintiff Sadeghi presented the PAP breast reconstruction surgery procedure as a new surgical technique in the medical literature in 2012.  A. Sadeghi *et al*., "Breast Reconstruction with the Profunda Artery Perforator Flap," *Plast. & Reconstr. Surg*. 2012; Jan; 129(1).

35.      Moreover, multiple studies in the medical literature have determined that the PAP breast reconstruction surgery procedure should be best performed by two surgeons.  Based on one study, single-surgeon breast reconstruction had significantly longer operating room time,

and higher wound occurrences that required surgical correction.  N. Haddock, "Co-Surgeons in Breast Reconstructive Microsurgery," *J. Microsurgery*, 2018: Jan; 38(1); 14-20. Another study found that operative time and length of stay were both significantly lower when a co-surgeon or assistant surgeon was present.  AJ Bauermeister, "Impact of Continuous Two-Team Approach in Autologous Breast Reconstruction," *J. Reconstr. Microsurg*., 2017; May; 33(4); 298-304.

36.     A third study found identical results, concluding: "The use of two operating surgeons has demonstrable effects on the outcomes of microsurgical breast reconstruction.  The addition of a second surgeon significantly decreases operating room time and shortens hospital length of stay in both unilateral and bilateral reconstruction.  It also significantly decreases donor-site wound healing complications." K.E. Weichman, "The Impact of Two Operating Surgeons on Microsurgical Breast Reconstruction," *Plast. Reconstr. Surg*., 2017 Feb.; 139(2); 277-284.

37.     Breast reconstruction was a covered service under the Plan.  The Plan states: "Reconstructive procedures are covered. . . . Benefits for reconstruction procedures include breast reconstruction following a mastectomy and reconstruction of the nonaffected breast to achieve symmetry, as mandated by the Women's Health and Cancer Rights Act of 1998."

38.     Breast reconstruction is a federal mandate under the Women's Health and Cancer Rights Act ("WHCRA"), which requires group health plans to cover *and reimburse* breast reconstruction after a mastectomy.  This law, codified at 29 U.S.C. § 1185b, states:

(a) **In general.** A group health plan . . . shall provide, in case of a participant or beneficiary who is receiving benefits in connection with a mastectomy and who elects breast reconstruction in connection with such mastectomy, coverage for –

(1) all stages of reconstruction of the breast on which mastectomy has been performed . . . in a manner determined in consultation with the attending physician and the patient.  Such coverage may be subject to annual deductibles and coinsurance provisions as may be deemed

appropriate and as are consistent with those established for other benefits under the plan or coverage . . .

(c)   **Prohibitions.** A group health plan, and a health insurance issuer offering group health insurance coverage in connection with a group health plan, may not –

    (2) penalize or otherwise reduce or limit the reimbursement of an attending provider,

(d)   **Rule of construction.** Nothing in this section shall be construed to prevent a group health plan or a health insurance issuer offering group health insurance coverage from negotiating the level and type of reimbursement with a provider for care provided in accordance with this section.

39.     The structure of this statute is straightforward. 29 U.S.C. § 1185b(a) requires that post-mastectomy breast reconstruction surgery be *covered*. 29 U.S.C. § 1185b(c) prohibits any restrictions or limitations on the *reimbursement rate* for this type of surgery, whether performed by an in-network surgeon or an out-of-network surgeon, as compared to other types of surgery where a plan or insurer may reimburse based on an out-of-network reimbursement methodology (such as "MRC"). However, 29 U.S.C. § 1185b(d), provides an exception to the strict requirement of 29 U.S.C. § 1185b(c): the plan or insurer may negotiate a lower reimbursement amount with the provider.

40.     The WHCRA applies to post-mastectomy breast reconstruction surgical procedures even in the absence of a diagnosis of breast cancer.

41.     Defendants failed to reimburse Plaintiffs in accordance with the amount mandated by the WHCRA. Instead, it unilaterally reimbursed Plaintiffs nothing based on, first, its assistant surgeon rule that did not apply to this case, and second, its co-surgeon rule that was a violation of the terms of the Plan. The WHCRA was incorporated into the Plan, as required under 29 U.S.C. § 1185b(b). Defendants' failure to reimburse Plaintiff pursuant to the WHCRA was a violation

of ERISA, 29 U.S.C. § 1132(a)(1)(b), as was the failure to adhere to the Plan's terms that covered co-surgeons.

42.     The WHCRA was enacted in October 21, 1998, not only because of horror stories of "drive-through mastectomies" where women were forced into four-hour out-patient mastectomy surgeries by their insurance companies to save money, but because of denials of coverage for breast reconstructions on the basis that such reconstructions were cosmetic.  As Senator Snowe stated in committee:

> We have also found that breast reconstructive surgery is considered cosmetic surgery.  Well, it is not.  Forty-three percent of women who want to undergo breast reconstructive surgery cannot because it is deemed cosmetic.  And that is wrong.  Breast reconstructive surgery is designed to restore a woman's wholeness.

144 Cong. Rec. § 4644 at *4648 (May 12, 1998).

43.     Accordingly, breast reconstruction was a covered and reimbursed service under Patient JB's Plan.

44.     Plaintiffs received an Assignment of Benefits from Patient JB in this case.  The assignment stated, in pertinent part:

> I hereby assign and convey to the fullest extent permitted by law any and all benefit and non-benefit rights (including the right to any payments) under my health insurance policy or benefit plan to Alireza Sadeghi, M.D. and Taylor Theunissen, M.D. (collectively, the "Providers") with respect to any and all medical/facility services provided by the Providers to me for all dates of service. It is specifically intended by this assignment of benefits to assign . . . any and all of my rights, including without limitation . . . (iv) to bring any appeal, lawsuit or administrative proceeding, for and on my behalf, in my name against any person and/or entity involved in the determination of benefits under any insurance policy or benefit plan.

45.     Plaintiffs received Designations of Authorized Representative from Patient JB.  It stated, in relevant part:

> I hereby appoint as a Designated Authorized Representative each of my Providers and . . . lawyers. . . [including the] right of my Authorized Representative to

10

pursue . . . litigation or otherwise under any Federal or State law with respect to payment for services provided by a Provider to me, including penalties, interest, and attorney fees.

46.    ERISA allows an Authorized Representative to bring litigation on behalf of a Plan Participant or Beneficiary of an ERISA Plan.

47.    The Plan Defendant is a fiduciary, and under ERISA § 404(a)(1)(B), 29 U.S.C. § 1104 (a)(1)(B) it must discharge its duties solely in the interest of Plan participants and beneficiaries like Patient JB.  It cannot permit its claims administrators to make claims determinations that would violate the terms of its SPD.

48.    The Morgan Stanley Chief Human Resources Officer is designated as the Plan Administrator and Named Fiduciary. The SPD states that the Plan Administrator "shall have discretionary authority to make any findings necessary or appropriate for any purpose under the Plans, including to interpret the terms of the Plans and to determine eligibility for entitlement to benefits under the Plans."

49.    The Plan Defendant breached its fiduciary duties under ERISA by permitting United as the claims administrator to make coverage decisions for breast reconstruction for Patient JB, a beneficiary of the Plan, that were in violation of the terms of the Plan.

<u>**COUNT I**</u>

**CLAIM AGAINST DEFENDANT UNITED FOR UNPAID BENEFITS
<u>UNDER EMPLOYEE BENEFIT PLAN GOVERNED BY ERISA</u>**

50.    Defendant United was obligated to pay benefits to the Defendant Plan participants and beneficiaries in accordance with the terms of the Defendant Plan's SPD, and in accordance with ERISA.

51.    Defendant United violated its legal obligations under this ERISA-governed Plan when it under-reimbursed Plaintiffs for the breast reconstruction surgery Plaintiffs provided to

Patient JB, in violation of the terms of the SPD and in violation of ERISA § 502(a)(l)(B), 29 U.S.C. § 1132(a)(l)(B).

52.     Plaintiffs submitted invoices to Defendant United for $389,000.00.

53.     Defendant United determined that the Allowed Amount was $0.00, leaving an unreimbursed amount of $389,000.00.

54.     Plaintiffs seek unpaid benefits and statutory interest back to the dates Plaintiffs' claims were originally submitted to Defendant United. They also seek attorneys' fees, costs, prejudgment interest and other appropriate relief against Defendant United.

## COUNT II

### CLAIM AGAINST MORGAN STANLEY HEALTH BENEFITS
### AND INSURANCE PLAN FOR VIOLATION OF ERISA 404 § (A)(1)(B)

55.     The Plan Defendant is a fiduciary, and under ERISA § 404(a)(1)(B), 29 U.S.C. § 1104 (a)(1)(B), it must discharge its duties solely in the interest of Plan participants and Beneficiaries.

56.     The Plan Defendant must act prudently with the care, skill, prudence and diligence that a prudent fiduciary would use, and must ensure that it is acting in accordance with Plan documents, such as its SPD.

57.     An ERISA fiduciary cannot fully delegate its fiduciary responsibilities to another entity.  The Plan Defendant cannot fully delegate its fiduciary responsibilities to administer claims to United and be free of its fiduciary responsibilities under ERISA.

58.     As a fiduciary, the Plan Defendant owed Plaintiffs a duty of loyalty and the avoidance of self-dealing.  It cannot permit its claims administrator to make claims and appeals determinations that violate the terms of its SPD.

59.     The Plan Defendant breached its duty of loyalty and violated its fiduciary responsibilities to Plaintiffs by failing to ensure that its claims administrator, United, was reimbursing Plaintiffs according to the Plan Defendant's SPD. Instead, the Plan, through its claims administrator, United, paid nothing for the surgery that was covered under the Plan.

60.     In addition, the Plan Defendant failed to monitor and correct United's misconduct, despite the Plan Defendant's continuing fiduciary duty to do so.

61.     Plaintiffs seek relief under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), which includes declaratory relief, surcharge, profits, and removal of a fiduciary that breached its duties.

**WHEREFORE**, Plaintiffs demand judgment in their favor against Defendants as follows:

(a)     Ordering Defendants to recalculate and issue unpaid benefits to Plaintiffs;

(b)     Ordering declaratory relief, surcharge, profits, and removal of the Plan Defendant for breach of its fiduciary duty and loyalty;

(c)     Awarding Plaintiffs the costs and disbursements of this action, including reasonable attorneys' fees under ERISA, and costs and expenses in amounts to be determined by the Court;

(d)     Awarding prejudgment interest; and

(e)      Granting such other and further relief as is just and proper.

Dated: June 30, 2020                                  /s/ Kernan A. Hand, Jr.
                                                 Kernan A. Hand, Jr.
                                                 HAND LAW FIRM
                                                 110 Veterans Memorial Blvd.
                                                 Suite 170
                                                 Metairie, LA  70005
                                                 Phone (504) 539-HAND (4263)
                                                 Cell (504) 908--9539
                                                 Fax (504) 539-4265

                                                 Robert J. Axelrod

AXELROD LLP
800 Third Avenue, Suite 2800
New York, NY 10022
(646) 448-5263
rjaxelrod@axelrodllp.com

Leslie S. Howard
COHEN HOWARD LLP
766 Shrewsbury Avenue, Suite 200
Tinton Falls, NJ 07724
(732) 747-5202
lhoward@cohenhoward.com

*Attorneys for Plaintiffs Alireza Sadeghi*
*M.D. and Taylor Theunissen, M.D. on*
*behalf of Patient JB*